# IN THE COURT OF APPEALS OF IOWA

No. 20-0368
Filed June 3, 2020

**IN THE INTEREST OF T.B.,**
**Minor Child,**

**N.B., Father,**
     Appellant.

_____

Appeal from the Iowa District Court for Polk County, Lynn Poschner, District Associate Judge.

The father appeals termination of his parental rights. **AFFIRMED**.

Britt Gagne of Gagne Law Office, Des Moines, for appellant father.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Erin Romar of Youth Law Center, Des Moines, attorney and guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Mullins and Ahlers, JJ.

**AHLERS, Judge.**

An incarcerated father who had not seen his fourteen-year-old child for nearly six years challenges the termination of his parental rights.[1]  He argues reasonable efforts were not made toward reunification and termination of his parental rights is not in the best interest of the child.  We affirm.

## I.      Procedural and Factual Background.

The child-in-need-of-assistance (CINA) proceeding that led to this termination-of-parental-rights proceeding was the third CINA proceeding involving this child.  The child was removed from her parents in 2007, 2016, and 2019.  She has been denied critical care, been the victim of physical and sexual abuse, and been left in the care of persons using methamphetamine.  She has been in approximately seventeen placements during the three CINA proceedings.  At the time of the termination hearing in February 2020, the child was in shelter care as a result of having run away from her foster home.

The father has not been involved in the child's life for long periods of time.  He did not participate in the first two CINA proceedings or during the first seven months of the third CINA proceeding.  The father has not physically seen the child since 2014.  The father has a long history of methamphetamine abuse and violence.  The father had his parental rights terminated with regard to three of his other eight children, and none of the other five children are in his care.  At the time of the termination hearing in this case, the father was in prison for domestic abuse assault and child endangerment.  His expected prison discharge date was

---

[1] The mother's parental rights were also terminated, but the mother did not appeal.

December 2020, although he hoped to be paroled to a residential correctional facility (RCF) within two months following the termination hearing.

## II.      Standard of Review and the Three-Step Framework.

After a contested hearing in which the father participated by telephone from prison, the juvenile court terminated the father's parental rights pursuant to Iowa Code section 232.116(1)(f) and (g) (2019).  The father appeals.  "We review proceedings terminating parental rights de novo."  *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018) (quoting *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014)).  "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses."  *Id.* (quoting *A.M.*, 843 N.W.2d at 110).  Our primary concern is the best interest of the child.  *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

Review of termination-of-parental-rights proceedings under Iowa Code chapter 232 follows a three-step analysis: (1) "determine whether any ground for termination under section 232.116(1) has been established"; (2) determine whether the best-interest-of-the-child framework set forth in section 232.116(2) supports termination of parental rights; and (3) "consider whether any exceptions in section 232.116(3) apply to preclude termination of parental rights."  *In re M.W.*, 876 N.W.2d 212, 219–20 (Iowa 2016).

## III.     Statement of Issues and Analysis.

The father does not challenge the juvenile court's findings the statutory grounds for termination of parental rights have been established or claim any of the exceptions in section 232.116(3) apply, so we will not address either of those steps in the three-step analysis.  *See* Iowa R. App. P. 6.903(2)(g)(3) ("Failure to

cite authority in support of an issue may be deemed waiver of that issue."); *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (stating we need not discuss any step the parent does not dispute). The father makes the following claims: (1) reasonable efforts at reunification were not made because he did not have visitation with the child while in prison and (2) termination is not in the child's best interest.

## A. Reasonable Efforts.

To begin the discussion of the father's challenge to reasonable efforts, we must first address the issue of error preservation. The State asserts the father did not preserve error on this issue. We disagree. It is true a parent must raise a challenge to the juvenile court about the adequacy of services "at the removal, when the case permanency plan is entered, or at later review hearings." *In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002). It is also true any request for different or additional services must be made to the juvenile court because "voicing complaints regarding the adequacy of services to a social worker is not sufficient." *Id.* In this case, the record shows the father raised the issue requesting visitation not only at the termination hearing in February 2020 but also during an earlier review hearing in August 2019. Therefore, the father has preserved error on this issue.

The Iowa Department of Human Services (DHS) is required to "make every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child." Iowa Code § 232.102(7); *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). "Visitation between a parent and child is an important ingredient to the goal of reunification. However, the nature and extent of visitation is always controlled by the best interests of the child." *In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996) (citations omitted). Imprisonment of a

parent does not "absolve[] the department of its statutory mandate to provide reunification services under all circumstances. Instead, . . . the department must assess the nature of its reasonable efforts obligation based on the circumstances of each case." *In re S.J.*, 620 N.W.2d 522, 525 (Iowa Ct. App. 2000). "Whether visitation for an incarcerated parent should be ordered as a reasonable effort toward reunification when timely raised by the parent will depend on the circumstances of each case." *In re L.M.*, 904 N.W.2d 835, 840 n.9 (Iowa 2017).

In this case, there is no dispute the father requested visitation with the child in August 2019 but had not received visitation by the time of the termination hearing six months later. At first blush, this may appear to be a lack of reasonable efforts. However, when the circumstances are considered, the lack of visitation was not unreasonable. When the father made his request for visitation, he was in prison and had been in prison for three months. Also, he had not physically seen the child for approximately five years. His request came seven months into the third CINA proceeding, which followed the prior two CINA proceedings in which the father had not participated. During the first four months of the third CINA proceeding when the father was not incarcerated, he made no request or effort to see the child. It was only after sitting in prison for three months that the father first broached the topic of visitation. In short, the father had no relationship or bond with the child when the request was made. Furthermore, the father had not addressed his longstanding issues of substance abuse and violence.

On top of the father's lack of relationship with the child when the request was made, the child was in no position to start a new course to try to mend the fractured relationship with her dad. During the time between the father's request

and the termination proceeding, the child had run away from her foster home, been placed in shelter, and was supposed to be in therapy. Given the child's mental-health and behavioral issues, it was recommended that any visitation with the father be in a therapeutic environment. That visitation could not take place because the child was not participating in therapy. In addition, when the child was asked about visitation with her father, the child expressed a desire to not have visitation and refused to provide a photo to send to her father. She also refused to attend the termination hearing.

Given the lack of relationship between the child and the father resulting from years of indifference on the part of the father, the need for the child to focus on her own issues, the child's lack of interest in visiting the father, and the father's unresolved substance-abuse and violence issues, it was reasonable that visitation did not occur as requested in this case. The DHS did not fail to make reasonable efforts at reunification.

## B. Best Interest of the Child.

For many of the same reasons discussed as to why lack of visitation was not a failure to make reasonable efforts, termination of the father's rights is in the child's best interest. The father has not been involved in the child's life for the majority of the child's life, including failing to become involved in two prior CINA proceedings. He has not physically seen the child since 2014. He has had his parental rights to three other children terminated, with the most recent of those three terminations occurring with respect to this child's full biological sibling approximately six months prior to the termination in this case.

The child, who was fourteen at the time of the termination hearing, did not want to see the father or provide him with a photo. She did not object to termination.

In addition, the father has a long history of unmitigated substance abuse and violence. He has been unable to demonstrate that he can maintain sobriety and avoid violence while not incarcerated. Furthermore, the father's current incarceration and anticipated forthcoming stay at an RCF prevent him from being a viable placement option now or in the near future.

There is nothing about the father's past or current situation that suggests that he will become a viable placement option even after he clears the hurdles associated with his incarceration and parole. *See In re T.B.*, 604 N.W.2d 660, 662 (Iowa 2000) ("The future can be gleaned from evidence of the parents' past performance and motivations."). The child should not be required to wait any longer to see if the father is willing to be a parent. *See In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990) ("Children simply cannot wait for responsible parenting. Parenting cannot be turned off and on like a spigot. It must be constant, responsible, and reliable."). We find it to be in the child's best interest to terminate the father's parental rights.

## IV. Conclusion.

Finding the father's claims unpersuasive, we affirm the juvenile court's order terminating the father's parental rights.

**AFFIRMED.**